IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIE UNIQUE DAVIS,

     Plaintiff,

v.                                              Civil Action No. **3:13CV272**

NICK SAMPLE, *et al.,*

     Defendants.

## MEMORANDUM OPINION

Willie Unique Davis, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1]  Davis contends that Defendant Officer Sample denied him adequate medical care during his incarceration in the Riverside Regional Jail ("RRJ").[2]  The matter is before the Court on Defendant's Motion for Summary Judgment.  Although Defendant provided Davis with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) notice, Davis has not responded.  For the reasons that follow, the Motion for Summary Judgment will be GRANTED.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] By Memorandum Opinion and Order entered February 3, 2015, the Court dismissed Defendant Elliott from the action because Davis failed to effectuate timely service on her and dismissed Claim Two against Defendant Sample.

## I.     SUMMARY OF RELEVANT ALLEGATIONS

In Davis's remaining claim (Claim One), he contends that Defendant Sample denied him adequate medical care on August 21, 2012 with regard to his complaints of pain, diarrhea, and a pancreatic attack.  Specifically, Davis alleges that Defendant Sample ignored his requests for medical attention when he complained of pain and diarrhea on August 21, 2012, and then later ignored his complaints that he was experiencing a pancreatitis attack, laughed at him, and left him lying on the floor in pain.  (Compl. 4, ECF No. 1 (as paginated by the CM/ECF docketing system).)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835

(4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citation omitted). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Defendant Sample submits: (1) his own declaration (Mem. Supp. Mot. Summ. J. Ex. 1, ECF No. 33–1 ("Sample Decl.")); (2) the declaration of Christy Jones, a Classification Officer at RRJ (*id.* Ex. 2, ECF No. 33–2 ("Jones Decl.")); and, (3) the declaration of Pauline Hicks, a Correctional Healthcare Assistant at RRJ (*id.* Ex. 3, ECF No. 33–3 ("Hicks Decl.")).[3]

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Davis failed to respond to the Motion for Summary Judgment. Davis also failed to swear to the contents of his Complaint under penalty of perjury. Accordingly, Davis has submitted no admissible evidence in support of

---

[3] Defendant Sample also submits the declaration of Dawn Flippin, a Major at RRJ (Mem. Supp. Mot. Summ. J. Ex. 4, ECF No. 33–4), and various grievances filed by Davis, to support his argument that Davis failed to exhaust his administrative remedies. Because Defendant Sample failed to submit the RRJ grievance policy into evidence, the Court is unable to ascertain whether Davis failed to exhaust his administrative remedies in compliance with that policy.

his claim.    In light of the foregoing submissions and principles, the following facts are established for the purposes of the motion for summary judgment.

### III.    SUMMARY OF UNDISPUTED FACTS

On August 21, 2012, Defendant Sample was working the day shift as a Correctional Officer in Medical Housing Unit 2 at RRJ. (Sample Decl. ¶ 2.)  The cells in Medical Housing Unit 2 are unlocked during the day and inmates can move freely between their cells and the common day room area for that unit. (*Id.*)  Defendant Sample was generally aware that Davis "had been complaining during the time he was housed there about how the medical staff were doing his medication in connection with pain he said he had from a chronic medical condition." (*Id.* ¶ 3.)  Nurses conducted rounds in Medical Housing Unit 2 four times a day, at 9:00 a.m., 1:00 p.m., 5:00 p.m., and 9:00 p.m., and provided inmates with their medication. (*Id.* ¶ 4.)

At approximately 2:30 p.m. on August 21, 2012, Davis came to the control booth where Defendant Sample was stationed. (*Id.* ¶ 5.)  Davis appeared to be in pain, and asked Defendant Sample "what was going on with his medication." (*Id.*)  Defendant Sample told Davis that his "chart had been pulled for the doctor to see." (*Id.*)  Davis "walked away." (*Id.*)

At approximately 2:47 p.m., while Defendant Sample was conducting rounds of Medical Unit 2, he observed Davis lying on the floor in the area of his cell. (*Id.* ¶ 6.)  Defendant Sample asked Davis why he was on the floor, and Davis told Defendant Sample "that he could not take the pain anymore." (*Id.*)  Defendant Sample "immediately contacted Medical, and spoke to Certified Healthcare Assistant Scoritino and told her about what I observed and what inmate Davis said, and she said that someone from Medical would come over to Medical Housing Unit 2 to see inmate Davis." (*Id.*)  Soon thereafter, Nurse Elliott and another nurse came to evaluate

Davis. (*Id.* ¶ 7.) The nurses spoke with Davis and then called the Nurse Practitioner from the control booth. (*Id.*)

Classification Officer Christy Jones was conducting interviews in Medical Housing Unit 2, and observed Davis lying on the floor stating he was in pain. (Jones Decl. ¶ 3.) Jones observed Defendant Sample call for medical staff, and two nurses arrived to attend to Davis. (*Id.*) The nursing staff spoke "with Davis about his medication and there seemed to be some disagreement between Davis and the nursing staff about medication he said he wanted and what medication nursing staff said he was allowed to have." (*Id.*) When Jones left Medical Housing Unit 2, nursing staff were still attending to Davis. (*Id.* ¶ 4.) According to Jones, "Davis did not appear to have any need for any sort of emergency or immediate medical intervention, and the nursing staff was handling his medical concern." (*Id.*)

At some point while the nurses attended to Davis, Lt. Walker also came through the unit and spoke with the nursing staff and Davis. (Sample Decl. ¶ 7.) Officer Mason from Master Control took Davis to Medical in a wheelchair. (*Id.*) Davis returned to Medical Housing Unit 2 at 5:05 p.m. the same day, having had his prescriptions refilled for three days. (*Id.*)

Davis's medical records indicate that after an exam by the medical department on August 21, 2012, "he was prescribed morphine and phenergan and given doses of both of those medications that same day at . . . 3:45 p.m." (Hicks Decl. ¶ 2.) The medical records also demonstrate that Davis refused his prescribed medications on August 20, 2012, the day before the alleged medical events. (Hicks Decl. Attach. at 3.)

Defendant Sample avers that "[a]t no time when I dealt with inmate Davis did I believe that he had any medical emergency or that he needed any more immediate medical treatment . . . ." (*Id.* ¶ 8) Defendant Sample explains that as a Correctional Officer he has no

5

medical training and "deferred to the medical judgments of the medical staff who [he] promptly informed of [his] observations of inmate Davis and what inmate Davis said . . . ."  (*Id.*) Defendant Sample avers that "[he] certainly did not laugh at [Davis's] medical situation" and "immediately communicated to medical personnel [his] observations regarding inmate Davis." (*Id.* ¶ 9.)

## IV.   EIGHTH AMENDMENT

To survive a motion for summary judgment on an Eighth Amendment claim, Davis must demonstrate that the Defendant Sample acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

Assuming without deciding, that Davis's alleged pain, diarrhea, and pancreatitis attack were "objectively, 'sufficiently serious,'" *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), Davis demonstrates no deliberate indifference to his medical needs by Defendant Sample. The record conclusively demonstrates that Defendant Sample reasonably responded to Davis's request for medical care by promptly calling the medical department to notify them that Davis reported pain and was lying on the floor, and appropriately relied on those individuals charged with Davis's medical care to treat Davis. *Iko*, 535 F.3d at 242 (omission in

original) ("'If a prisoner is under the care of medical experts . . . , a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))). To the extent Davis disagreed with the attending medical staff's assessment and the proper course of action for treating him, Davis's disagreement fails to demonstrate deliberate indifference by the medical staff, much less Defendant Sample, who had no medical training and could rely on their medical judgment. *See id.* Moreover, because Defendant Sample responded reasonably to Davis's medical concern, he cannot be found to have acted with a sufficiently culpable state of mind to establish deliberate indifference. *See Brown*, 240 F.3d at 389 (alteration in original) (citations omitted) (internal quotation marks omitted) (holding that "an official who responds reasonably to a known risk has not disregard[ed] an excessive risk to inmate health or safety . . . and therefore has not acted with deliberate indifference.") Davis fails to demonstrate Defendant Sample acted with deliberate indifference to Davis's medical needs. Accordingly, Claim One and the action will be DISMISSED.

## V.    CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 32) will be GRANTED. The action will be DISMISSED WITH PREJUDICE.

An appropriate Final Order shall issue.

Date: 6/26/15
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge